**SO ORDERED.**

**SIGNED this 02 day of November, 2012.**

_____
                    Randy D. Doub
          **United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF NORTH CAROLINA
### WILSON DIVISION

IN RE:                                    CHAPTER 13

**DERRICK MCCLENDON,**                    **CASE NUMBER: 10-04226-8-RDD**
**JANICE MCCLENDON,**

    **DEBTORS.**

_____

**JANICE MCCLENDON,**                     **ADVERSARY PROCEEDING**
**DERRICK MCCLENDON,**                     **NUMBER: 10-00305-8-RDD**

    **Plaintiffs**

    **v.**

**WALTER HOME MORTGAGE; JOYCE**
**ANN KELLER, Substitute Trustee; GREEN**
**TREE SERVICING, LLC; WALTER**
**INVESTMENT MANAGEMENT**
**CORPORATION; WALTER MORTGAGE**
**COMPANY AS TRUSTEE FOR THE MID-**
**STATE CAPITAL TRUST 2010-1; and**
**MID-STATE CAPITAL TRUST 2010-1**

    **Defendants**

### ORDER

    Pending before the Court is the Defendants' Motion for Summary Judgment, the

accompanying Memorandum of Law filed by Defendants Walter Mortgage Company ("WMC") and

Joyce Ann Keller, Substitute Trustee, (together as the "Defendants") on February 29, 2012 (the "Motion for Summary Judgment") and the Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment filed by Derrick and Janice McClendon (the "Plaintiffs") on April 11, 2012. The Court conducted a hearing on May 24, 2012 in Wilson, North Carolina to consider these matters.[1] After the initial hearing, the Court instructed the parties to submit a memorandum of law and continued the hearing on the Motion for Summary Judgment. The continued hearing took place on September 12, 2012 in Wilson, North Carolina.

## JURISDICTION

Subject matter jurisdiction and jurisdiction over the parties exists pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference of the United States District Court for the Eastern District of North Carolina dated August 3, 1984.

This matter is a core proceeding as set forth in Section 157(b)(2) of Title 28 of the United States Code.

## STANDARD FOR SUMMARY JUDGMENT

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In making this determination, conflicts are resolved by viewing

---

[1]Since the initial hearing on the Motion for Summary Judgment, the Plaintiff amended the complaint to implead Walter Investment Management Corporation, Walter Mortgage Company as Trustee for Mid-State Capital Trust 2010-1, Mid-State Capital Trust 2010-1, and Green Tree Servicing, LLC as additional defendants to this adversary proceeding. The amendment occurred one day prior to the May 24, 2012 hearing on the Motion for Summary Judgment. Accordingly the Court confines its analysis to the original complaint.

all facts and all reasonable inferences in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). If there is no genuine issue of material fact, and the issue to be decided is a matter of law, a ruling on a motion for summary judgment is appropriate. However, if there are genuine issues of material fact, then summary judgment is not appropriate.

## BACKGROUND

The Plaintiffs filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code on May 26, 2010. The Plaintiffs executed a promissory note in favor of WMC (the "Note") on January 9, 2008. The Note is secured by a deed of trust encumbering the Plaintiffs' residence at 3910 Central Heights Road, Goldsboro, North Carolina, 27534 (the "Property") referenced in Book 2589, Page 551 of the Wayne County Register of Deeds. The terms of the Note amortize the principal amount of $125,368.00 over 360 months at a fixed interest rate of 11.5% per annum resulting in a monthly payment of $1,241.51.

The Complaint states the Note financed the construction of a stick built home and the purchase of an undeveloped lot. As WMC did not own or sell real estate, Plaintiffs were required to purchase a lot for the home to be constructed on from a third party. The Plaintiffs selected a lot and paid the seller a down payment. WMC then financed the purchase price of the lot together with the construction costs of the home as a package deal. The Plaintiffs allege that in June 2007, prior to the sale closing date, they received a loan pre-qualification application that stated the purchase price of the home was $119,840.00 with an interest rate of 9.25% per annum. On June 14, 2007, Plaintiffs paid the deposit for the lot. On June 15, 2007, the Plaintiffs signed a form provided by WMC stating the loan amount would be $119,840.00 with an interest rate of 10.25%. Some two weeks later, on June 28, 2007, the Plaintiffs signed another form provided by WMC acknowledging

3

the Plaintiffs would elect to receive a loan with a high loan to value ratio. The Plaintiffs elected to borrow an initial principal amount of $117,090.00 within an interest rate of 11.5% and a reduced down payment of $2,750.00.[2] On July 19, 2007, the Plaintiffs executed the Commitment to Make Real Estate Mortgage Loan, which indicated WMC approved the application for real estate mortgage loan with principal of $125,118.00 with an 11.5% interest rate. When the Plaintiffs finally signed the HUD Settlement Statement, the principal loan amount was for $125,368.00 with an 11.5% interest rate. After closing, the Plaintiffs defaulted on the Note and WMC brought a special proceeding to foreclose on the deed of trust securing the Property. After several continuances, the Plaintiffs filed the Chapter 13 bankruptcy case to stay the foreclosure proceeding.

On November 29, 2010, the Plaintiffs filed this adversary proceeding objecting to WMC's proof of claim and alleging causes of action related to the origination of the loan evidenced by the Note. In the Complaint, the Plaintiffs assert the mortgage held by WMC qualifies as a rate spread home loan with an unlawful interest rate of 11.5% in violation of N.C. Gen. Stat. §§ 24-1.1F (2008), -2, et seq. (2011). The Plaintiffs object to Proof of Claim 12 in the amount of $137,068.05 filed by WMC. Plaintiffs allege the proof of claim "fails to adequately support why it should recover the amount of the secured claim based on its usurious rate spread home loan." Compl. at 9 ¶ 70. Furthermore, Plaintiffs allege WMC's actions in originating the loan constituted unfair and deceptive trade practices in violation of N.C. Gen. Stat. § 75-1.1 (2011). Plaintiffs fourth claim for relief stems from the unfair collection of a debt, alleging WMC's attempt to collect on a usurious rate spread home loan debt in violation of N.C. Gen. Stat. § 24.1-1F (2008) ("§ 24-1.1F") violated the provisions

---

[2]The Plaintiffs other option was to agree to a principal amount of $108,106.00 with interest at 10.25% and a down payment of approximately 10%, or $11,734.00.

4

of N.C. Gen. Stat. §§ 75-54, 75-55 (2011).  Finally, Plaintiffs assert that they are entitled to reformation of the loan terms and seek a declaratory judgment pursuant to N.C. Gen. Stat. § 1-254 (2011).

In the Answer to the Complaint, the Defendants admit the 11.5% interest rate meets the requirements of a rate spread home loan pursuant to N.C. Gen. Stat. § 24-1.1F(a)(7).  However, in the Motion for Summary Judgment, the Defendants argue the loan does not violate § 24-1.1F and is not usurious because WMC acted reasonably and in good faith by following long standing procedures when qualifying the Plaintiffs for a loan as required by then enacted N.C. Gen. Stat. § 24-1.1F(c).  In support of this argument, the Defendants assert WMC verified and considered the Plaintiffs' credit history, income, obligations, employment, and other financial resources when evaluating the Plaintiffs' ability to obtain a loan.  Furthermore, the Defendants state WMC used reasonable commercially recognized underwriting standards, as evidenced by the affidavit of Gary Davis, Vice President of Underwriting, in considering the Plaintiffs' creditworthiness.  The Defendants contend that because WMC complied with § 24.1-1F's requirements by undertaking commercially recognized underwriting standards, no genuine issue of material fact remains as to the violation of North Carolina usury laws and the Defendants are entitled to judgment as a matter of law.

Further, the Defendants argue that because WMC did not act in violation of § 24-1.1F, WMC's proof of claim is valid and Plaintiffs' objection to the claim should be dismissed.  Likewise, because Plaintiffs' third claim for relief for unfair and deceptive trade practices is based on relief for violation of § 24-1.1F, no issues of material fact exist and the Plaintiffs' claim should be dismissed. Furthermore, the Defendants argue the allegation of a violation of § 24-1.1F is insufficient to rise

5

to the standard of an unfair and deceptive trade practice.  As to the fourth claim for relief, violation of N.C. Gen. Stat. § 75-50 (2011), WMC argues there is no basis for relief because Plaintiffs' only contention is that WMC attempted to collect on an usurious debt and Plaintiffs failed to allege facts supporting substantive violations of any subsection of Chapter 75.  Finally, the Defendants assert the Plaintiffs' fifth claim for relief seeking declaratory relief should be dismissed because it is based on all other claims.  The Defendants argue that because all the other claims must be dismissed, claim five must also be dismissed.

In the Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Plaintiffs' Memorandum"), Plaintiffs argue that WMC did not fully consider the Plaintiffs' ability to repay the loan at the time it was made and genuine issues of material fact exist. In support of this argument, Plaintiffs allege: (1) WMC did not take into consideration the inclusion of taxes and insurance in the monthly payment; (2) no "adequate compensating factors" existed to support the making of the loan; and (3) WMC failed to properly evaluate the Plaintiffs' other financial resources in accordance with § 24-1.1F.  As such, Plaintiffs argue when viewed in the light most favorable to the non-moving party there are genuine issues of material fact as to § 24-1.1F and the Defendants are not entitled to judgment as a matter of law.  Plaintiffs' Memorandum does not address whether genuine issues of material fact exist as to claims for relief three, four, and five.

After the initial hearing on the Motion for Summary Judgment, the Court ordered the parties to submit memoranda of law as to the effect of the two (2) year statute of limitations provided by N.C. Gen. Stat. § 1-53 (2011) by an order entered on July 16, 2012.  The Defendants' Memorandum in Support of Motion for Summary Judgment, filed by the Defendants on August 6, 2012, asserts that based on the two (2) year statute of limitations, any payments made by the Plaintiffs more than two

6

(2) years prior to the date the Complaint was filed cannot be the basis for any action in usury and are barred by the statute of limitations. Therefore, should the Plaintiffs prevail on a claim for usury, damages should not include payments prior to November 29, 2008, or two-years prior to the filing of the complaint.  In the Plaintiffs' Supplemental Memorandum in Opposition to Defendants' Motion for Summary Judgment, filed by the Plaintiffs on August 6, 2012, the Plaintiffs acknowledge the statute of limitations bars recovery for forfeiture of interest pursuant to N.C. Gen. Stat. § 24-2. Pls.' Supplemental Mem. In Opp'n to Defs.' Mot. for Summ. J. 4.  However, the Plaintiffs assert they have a legitimate basis to seek forfeiture of the entire interest under the Note through the theory of recoupment.  The Plaintiffs argue they are seeking forfeiture of the entire interest in defense of WMC's claim in the bankruptcy case and when asserted in this manner, the statute of limitations does not apply.  Plaintiffs also seek recovery of the penalty for usury of twice the interest paid within the two year statute of limitations (interest paid after November 29, 2008) as provided by N.C. Gen. Stat. § 24-2 as well as twice the interest paid outside the statute of limitations under the theory of recoupment.

## DISCUSSION

### I.    Statute of Limitations

Section 1-53 of the North Carolina General Statutes provides an action for the penalty for usury along with the forfeiture of all interest for usury shall be commenced within two (2) years from the date of the transaction. N.C. Gen. Stat. § 1-53(2)-(3) (2011). *Merritt v. Knox*, 94 N.C. App. 340, 342, 380 S.E. 2d 160, 162 (N.C. App. 1989).  In the present case, the statute of limitations bars the forfeiture of all interest for usury and a penalty of twice the interest paid outside the limitation

period, or prior to November 29, 2008. However, the Plaintiffs are correct that recoupment allows them to avoid the statute of limitations if plead defensively.

The North Carolina General Statutes provide "the right to enforce the obligation of a party to pay an instrument is subject to . . . [a] claim in recoupment of the obligor against the original payee of the instrument if the claim arose from the transaction that gave rise to the instrument . . . ." N.C. Gen. Stat. § 25-3-305(a) (2011). Because recoupment is in the nature of a defense arising out of the same transaction that a plaintiff's claim is brought, the defense "is never barred by the statute of limitations so long as the main action itself is timely." *Bull v. U.S.*, 295 U.S. 247, 262 (1935). To properly plead recoupment, a claim must: "(i) arise from the same transaction or occurrence as the main claim; (ii) seek relief of the same kind and nature as that sought by the main claim; and (iii) be defensive in nature and seek no affirmative relief." *Berger v. City of North Miami, Fla.*, 820 F.Supp. 989, 992 (4th Cir. 1993).

The Plaintiffs assert the § 24.1-1F claims in defense of WMC's proof of claim. The claims relate to the interest charged under the Note, which also serves as the basis for WMC's claim. Therefore, the claim arises out of the same transaction or occurrence and seeks relief of the same kind and nature as that sought by the main claim.

While not procedurally defensive in nature, an adversary proceeding can serve as the proper form for a claim in recoupment when it includes an objection to claim and the complaint seeks additional relief. *See* Federal Rule of Bankruptcy Procedure 3007.[3] *Salazar v. First Residential Mortg. Serv. Corp.*, No. 10-00101, 2011 WL 1237648, at *6 (Bankr. D. Md. 2011) (allowing

---

[3]Fed. R. Bankr. P. 3007(b) provides "[a] party in interest shall not include a demand for relief of a kind specified in Rule 7001 in an objection to the allowance of a claim, but may include the objection in an adversary proceeding."

plaintiffs to plead in recoupment a claim barred by the statute of limitations and object to a proof of claim where complaint sought additional relief under state statute); *Coxson v. Commonwealth Mortg. Co. of Am., L.P. (In re Coxson)*, 43 F.3d 189, 194 (5th Cir. 1995) (explaining that the fact the debtors were plaintiffs in the adversary proceeding did preclude the finding that claims were raised defensively). Rule 3007(b) "requires that if a demand for relief is sought in addition to the claim objection, the matter must be brought as an adversary proceeding." *Salazar*, 2011 WL 1237648, at *6. Therefore, though a typical adversary proceeding is affirmative in nature, "[t]o deny Plaintiffs the defense of recoupment here would be to elevate form over substance." *Id*. Thus, if pled in recoupment, the Court cannot find the Plaintiffs' claims are barred by the applicable statute of limitations.

The remaining causes of action set forth in the Complaint are controlled by a separate four (4) year statute of limitations provided by N.C. Gen. Stat. § 75-16.2.[4] Because the Plaintiffs executed the Note on January 9, 2008 and filed the Complaint on November 29, 2010, claims three and four are not barred the applicable statute of limitations.

## II.   Violation of N.C. Gen. Stat. § 24-1.1F (2008)

In North Carolina, the legal rate of interest is eight percent (8%). N.C. Gen. Stat. § 24-1 (2011). However, where the principal amount of a loan is $10,000.00 or more, "the parties may contract for the payment of interest as agreed upon by the parties." N.C. Gen. Stat. § 24-1.1A(a)(1) (2011); *Sanders v. Countywide Home Loans, Inc.*, No. 3:08-cv-448-RJC, 2009 WL 929093, at *7

---

[4]The Plaintiffs suggest a three (3) year statute of limitations applies to claims four and five pursuant to N.C. Gen. Stat. § 1-52(1) because the claims bring action "upon a contract, obligation or liability arising out of a contract, express or implied . . . ." N.C. Gen. Stat. § 1-52(1) (2011). However, when analyzed under either statute of limitations claims four and five are not barred.

(W.D.N.C. Apr. 2, 2009).  Therefore, the 11.5% interest rate WMC charged the Plaintiffs is not usurious on its face.

To establish liability under § 24-1.1F, the Plaintiffs must prove the Note qualifies as a rate spread home loan as defined by the statute.  *See* N.C. Gen. Stat. § 24-1.1F(c) (2008).  Section 24-1.1F(a)(7) provides a rate spread home loan is a loan in which:

> a. The loan is not (i) an equity line of credit as defined in G.S. 24-9, (ii) a construction loan as defined in G.S. 24-10, (iii) a reverse mortgage transaction, or (iv) a bridge loan with a term of 12 months or less, such as a loan to purchase a new dwelling where the borrower plans to sell a current dwelling within 12 months.
>
> b. The borrower is a natural person.
>
> c. The debt is incurred by the borrower primarily for personal, family, or household purposes.
>
> d. The principal amount of the loan does not exceed the confirming loan size limit for a single-family dwelling as established from time to time by Fannie Mae.
>
> e. The loan is secured by (i) a security interest in a manufactured home . . . (iii) a mortgage or deed of trust on real property in the State upon which there is to be constructed using the loan proceeds a structure or structures designed principally for occupancy of from one to four families which . . . will be occupied by the borrower as the borrower's principal dwelling.
>
> f. The loan's annual percentage rate exceeds each of the following:
>
>> 1. The average prime offer rate for a comparable transaction as of the date of the interest rate for the loan is set by (i) one and one-half percentage points (1.5%) or more, if the loan is secured by a first lien mortgage or deed of trust . . . .
>>
>> 2. The conventional mortgage rate by (i) one and three-quarters percentage points (1.75%) or more, if the loan is secured by a first lien mortgage or deed of trust . . . .
>>
>> 3. The yield on U.S. Treasury securities having comparable periods of maturity by (i) three percentage points or more, if the loan is secured by a first lien mortgage or deed of trust . . . .

N.C. Gen. Stat. § 24-1.1F(a)(7) (2011).[5]

At the time WMC made the loan to the Plaintiffs, N.C. Gen. Stat. § 24-1.1F(c) provided in

pertinent part:

> [n]o lender shall make a rate spread home loan unless the lender reasonably and in
> good faith believes that at the time the loan is consummated that one or more of the
> obligors, when considered individually or collectively, has the ability to repay the
> loan according to its terms and to pay applicable real estate taxes and hazard
> insurance premiums. If a lender making a rate spread home loan knows that one or
> more mortgage loans secured by the same real property will be made
> contemporaneously to the same borrower with the rate spread home loan being made
> by that lender, that lender making the rate spread home loan must document the
> borrower's ability to repay the combined payments of all loans on the same real
> property.
>
> (1) A lender's analysis of an obligor's ability to repay a rate spread home loan
> according to the loan terms and to pay related real estate taxes and insurance
> premiums shall be based on a consideration of the obligor's credit history, current
> and expected income, current obligations, employment status, and other financial
> resources other than the obligor's equity in the real property that secures repayment
> of the rate spread home loan.
>
> (2) In determining an obligor's ability to repay a rate spread home loan, the lender
> shall take reasonable steps to verify the accuracy and completeness of information
> provided by or on behalf of the obligor using tax returns, payroll receipts, bank
> records, reasonable alternative methods, or reasonable third-party verification. . . .
>
> (4) A lender's analysis of an obligor's ability to repay a rate spread loan may utilize
> reasonable commercially recognized underwriting standards and methodologies,
> including automated underwriting systems, provided the standards and
> methodologies comply with the provisions of this section.

---

[5]The Court cites the 2011 statute because this version of the statute was in effect at the
time the Plaintiffs executed the Note.

11

N.C. Gen. Stat. § 24-1.1F(c) (2007).[6]  Furthermore, a rate spread home loan that violates subsection

(c) of § 24-1.1F is declared usurious in violation of the provisions of Chapter 24.  N.C. Gen. Stat.

§ 24.1-1F(d) (2011).

In its Answer, the Defendants state the Plaintiffs' allegations under § 24-1.1F(a)(7)(a) - (e)

require a legal conclusion but admit the Plaintiffs' loan meets the requirements of § 24-

1.1F(a)(7)(f)(1) - (3).  Therefore, the Court shall focus its analysis on whether there is a genuine issue

of material fact under N.C. Gen. Stat. § 24-1.1F(c).

In support of the Motion for Summary Judgment, the Defendants offer the affidavit of Gary

Davis, Vice President of Credit and Underwriting and Vice President of Pipeline Management (an

entity owned by WMC's parent company, Walter Industries).  Mr. Davis explains WMC considered

the Plaintiffs' credit history, current and expected income, current obligations, and employment

status in the loan underwriting process.  Davis Aff.  4 ¶ 19.  Furthermore, Mr. Davis stated WMC

took reasonable steps to verify the accuracy of the information provided by the Plaintiffs by

reviewing tax returns, payroll receipts, and soliciting third party verification.  Davis Aff.  4 ¶ 20.  In

doing so, Mr. Davis stated WMC used commercially recognized underwriting standards and

methodologies as allowed under N.C. Gen. Stat. § 24-1.1F(c)(4).  Davis Aff.  9 ¶ 49.  However, Mr.

Davis admitted WMC did not consider the estimated monthly taxes and insurance amounts in the

Plaintiffs' total debt-to-income ratio or housing-to-income ratio.  Davis Aff. 7 ¶ 38.  Mr. Davis

explained that because taxes and insurance are estimated at one percent (1.0%) and one and one half

---

[6]The Court notes this version of N.C. Gen. Stat. § 24-1.1F(c) applied at the time Plaintiffs
executed the Note with WMC in January 2008. Subsection (c) was rewritten by 2009 N.C. Sess.
Laws 457.

percent (1.5%), respectively, of the total amount of the loan, the estimates are high and "would unnecessarily result in qualified loan applicants being denied a loan." Davis Aff. 7 ¶ 38.  Mr. Davis stated that even if the interest and taxes were included in calculating the debt-to-income ratio, and the resulting debt-to-income ratio exceeded WMC's guidelines, adequate compensating factors existed to allow an exception. Davis Aff. 7 ¶ 39.  In the Plaintiffs' case, Mr. Davis stated Mrs. McClendon's ten (10) year employment record at Wal-Mart, Mr. McClendon's monthly Social Security payments, and the Plaintiffs' "very good" rental payment history were sufficient compensating factors justifying making the loan.  Davis Aff. 7 ¶ 40.

When viewing the evidence in the light most favorable to the Plaintiffs, the Court finds there is a genuine issue of material fact and the Defendants are not entitled to judgment as a matter of law for violation of § 24-1.1F.  Based on the pleadings and Mr. Davis' affidavit, there is a genuine issue of material fact as to whether WMC "reasonably and in good faith" believed the Plaintiffs had the ability to repay the loan at the time it was made.  N.C. Gen. Stat. § 24-1.1F(c).  The affidavit supports the Defendants' argument that WMC took reasonable steps in evaluating the Plaintiffs' ability to repay the loan by reviewing critical documentation concerning the Plaintiffs' financial status.  However, the affidavit makes it clear that WMC failed to consider the taxes and insurance in calculating the Plaintiffs' monthly debt servicing amount to come up with an accurate debt-to-income ratio.  Whether such a practice is a reasonable and customary practice within the residential mortgage industry is a genuine issue of material fact.  Furthermore, the Defendants argue there were sufficient adequate compensating factors justifying the loan to the Plaintiffs even if the debt-to-income ratio were adjusted by including the tax and insurance estimates.  Whether the Plaintiffs'

employment history, Social Security income, and rental payment history are adequate compensating factors justifying the loan is also a genuine issue of material fact.

Therefore, viewed in the light most favorable to the Plaintiffs, the Court finds there are genuine issues of material fact as to the violation of § 24-1.1F and the Defendants are not entitled to judgment as a matter of law.

## III.    Objection to Proof of Claim

A claim filed under 11 U.S.C. § 501 is deemed allowed unless a party in interest objects thereto.  11 U.S.C. § 502(a).  Plaintiffs argue Proof of Claim 12, filed by WMC, should not be allowed because the claim includes impermissible and usurious fees and charges in connection with a rate spread mortgage that the claim is based on.  Plaintiffs assert WMC's violation of § 24-1.1F renders the interest and fees included in Proof of Claim 12 usurious, and as such, WMC is not entitled to those amounts in its claim.  Conversely, the Defendants argue the Plaintiffs' loan was not made in violation of § 24-1.1F and the claim is valid and should be allowed.

The Court finds any determination of WMC's claim is contingent upon the determination of whether WMC violated § 24-1.1F as the validity of the claim is based on the Note.  Therefore, because genuine issues of material fact exist as to Plaintiffs' claim for violation of § 24-1.1F, a genuine issue of material fact exists as to the objection to the proof of claim and the Defendants are not entitled to judgment as a matter of law.

## IV.    Unfair and Deceptive Trade Practice Claim

"Pursuant to N.C. Gen. Stat. § 75-1.1, '[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared

unlawful.'" *Noble v. Hooters of Greenville (NC), LLC*, 199 N.C. App. 163, 166, 681 S.E.2d 448, 451

(N.C. App. 2009) (quoting N.C. Gen. Stat. 75-1.1(a) (2007)).   In order to prevail on a claim for

unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1, "'a plaintiff must show: (1) an

unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused

injury to plaintiffs.'" *Walker v. Fleetwood Homes of N.C., Inc.*, 362 N.C. 63, 71-72, 653 S.E.2d 393,

399 (2007) (quoting *Gray v. N.C. Ins. Underwriting Ass'n*, 352 N.C. 61, 68, 529 S.E.2d 676, 681

(2000).  A practice is unfair when it offends established public policy or when it is "'immoral,

unethical, oppressive, unscrupulous, or substantially injurious to customers.'" *Id.* (quoting *Marshall*

*v. Miller*, 302 N.C. 539, 548, 372 S.E.2d 397, 403 (1981)).   "[A] practice is deceptive if it has the

capacity or tendency to deceive; proof of actual deception is not required."  *Marshall*, 302 N.C. at

548, 372 S.E.2d at 403.

        The Supreme Court of North Carolina has stated, "'it is a question for the jury as to whether

the defendants committed the alleged acts [in violation of N.C. Gen. Stat. § 75-1.1], and then it is

a question of law for the court as to whether these proven facts constitute an unfair or deceptive trade

practice.'" *Sunbelt Rentals, Inc. v. Head & Engquist Equip., LLC*, 174 N.C. App. 49, 59, 620 S.E.2d

222, 229-30 (N.C. App. 2005) (quoting *United Labs., Inc., v. Kuykendall*, 335 N.C. 183, 187 n. 2,

437 S.E.2d 374, 377 n. 2 (1993)).

        In the present case, the alleged unfair and deceptive act complained of is the charging of

usurious interest rates in violation of § 24-1.1F.   Compl. 10 ¶ 83.   The Defendants argue WMC

committed no unfair and deceptive trade practice because the Plaintiffs have offered no evidence to

suggest Plaintiffs were deceived. Def.'s Mem. in Supp. of Mot. for Summ. J. 18.   The Court finds

that North Carolina case law does not require proof of actual deception, only the tendency to deceive.

15

*See Marshall*, 302 N.C. at 548, 372 S.E.2d at 403. Therefore, when viewing the evidence in the light most favorable to the Plaintiffs, the Court finds there is a genuine issue of material fact concerning whether the alleged actions in violation of § 24-1.1F had a tendency to deceive the Plaintiffs into entering a usurious rate spread home loan.

Because the Court has determined there are genuine issues of material fact as to whether WMC reasonably and in good faith believed the Plaintiffs had the ability to repay the loan, and the unfair and deceptive trade practice violation is brought based on that claim, the Court must also find there is a genuine issue of material fact remaining as to the unfair and deceptive trade practice violation. These questions of fact must be determined before the Court is able to find as a matter of law the proven facts do or do not constitute an unfair or deceptive trade practice. *See Sunbelt Rentals, Inc.*, 174 N.C. App. at 59, 620 S.E.2d at 229-230.

## V.    Violation of N.C. Gen. Stat. § 75-50, et seq.

In order to state a claim under the North Carolina Debt Collection Act, a plaintiff must meet the statutory threshold of showing first that "the obligation owed [is] a 'debt'; second, the one owing the obligation [is] a 'consumer'; and third, the one trying to collect the obligation [is] a 'debt collector.'" *Reid v. Ayers*, 138 N.C. App. 261, 263, 531 S.E.2d 231, 233 (2000); N.C. Gen. Stat. § 75-50(1)-(3) (2011). Once the requirements of § 75-50 are met, "a claim for unfair debt collection practices must then meet the three generalized requirements found in section 75-1.1: (1) an unfair act (2) in or affecting commerce (3) proximately causing injury." *Reid v. Ayers*, 138 N.C. App. at 263, 531 S.E.2d at 233. In the context of debt collection, an unfair act includes "the use of threats, coercion, harassment, unreasonable publications of the consumer's debt, deceptive representations,

16

and unconscionable means." *Davis Lake Cmty Ass'n, Inc. v. Feldmann*, 138 N.C. App. 292, 296, 530 S.E.2d 865, 868 (2000) (citing N.C. Gen. Stat. §§ 75-51 to -56).

The North Carolina General Statues define a consumer as "any natural person who has incurred a debt or alleged debt for personal, family, household or agricultural purposes." N.C. Gen. Stat. § 75-50(1) (2011).  In the present case, the Plaintiffs qualify as consumers because they incurred a debt for the construction of their home by executing the Note in favor of WMC.  A debt is "any obligation owed or due or alleged to be owed or due from a consumer." N.C. Gen. Stat. § 75-50(2) (2011).  The Plaintiffs owed a debt to WMC as evidenced by the Note.  A debt collector is "any person engaging, directly or indirectly, in debt collection from a consumer . . . ." N.C. Gen. Stat. § 75-50(3) (2011).  WMC engaged in collecting a debt from the Plaintiffs by accepting payment under the terms of the Note.

As this initial threshold has been met, Plaintiffs must then demonstrate WMC committed an unfair act.  Plaintiffs specifically allege WMC committed unfair acts through deceptive representations and unconscionable means pursuant to N.C. Gen. Stat. § 75-54 to -55 (2011).

Section 75-54, labeled Deceptive Representation,  provides "[n]o debt collector shall collect or attempt to collect a debt or obtain information concerning a consumer by any fraudulent, deceptive or misleading representation."  N.C. Gen. Stat. 75-54 (2011).  Section 75-54 then enumerates eight nonexclusive examples of fraudulent, deceptive or misleading representation.  The Plaintiffs allege no grounds under the specific examples provided by § 75-54.  However, the Court notes,

> [t]he specific conduct delineated as prohibited in N.C. Gen. Stat. § 75-54 are examples of unfair practices proscribed by N.C. Gen. Stat. § 75-1.1 . . . To prevail on a claim for violation of this section, one need not show deliberate acts of deceit

17

> or bad faith, but must nevertheless demonstrate that the act complained of 'possessed the tendency or capacity to mislead, or created the likelihood of deception.'

*Forsyth Mem'l Hosp., Inc. v. Contreras*, 107 N.C. App. 611, 614, 421 S.E.2d 167, 169-70 (1992). Furthermore, to prevail on a claim for violation of N.C. Gen. Stat. § 75-54, "one need not show deliberate acts of deceit or bad faith, but must nevertheless demonstrate that the act complained of 'possessed the tendency or capacity to mislead, or created the likelihood of deception.'" *Id.* at 614, 170 (quoting *Overstreet v. Brookland, Inc.*, 52 N.C. App. 444, 453, 279 S.E.2d 1, 7 (1981)).

The Defendants argue there is no evidence of deceptive representation in attempt to collect on the Plaintiffs' loan and there are no substantive allegations of violation of the statute. However, the burden set by the Court of Appeals of North Carolina does not require a showing of deliberate acts of deceit, rather that there can be some inference drawn related to the ability to deceive  The Plaintiffs allege WMC participated in a usurious loan transaction through violation of § 24-1.1F. Whether WMC reasonably and in good faith knew the Plaintiffs had the ability to repay the loan at the time it was made is a genuine issue of material fact.  While no allegations expressly indicate deliberate acts of deceit or bad faith, the Court finds there is sufficient basis to suggest WMC's actions possessed the capacity to mislead or created the likelihood of deception if the Plaintiffs' loan is found to be usurious under § 24-1.1F.  Accordingly, the Court finds the pleadings provide sufficient evidence to suggest there is a genuine issue of material fact as to whether WMC violated § 24-1.1F and whether such violation constitutes an act prohibited by debt collectors pursuant to § 75-54.

While the Plaintiffs do not allege a specific violation § 75-55, they do assert WMC's actions to collect on a usurious rate spread home loan debt in violation of § 24-1.1F "without legal

18

authorization to do so constitute violations of the provisions of N.C.G.S. 75-55." Comp. 11 ¶ 90.

After consideration of § 75-55(2), the Court finds a genuine issue of material fact exists. Section

75-55(2) provides:

> No debt collector shall collect or attempt to collect any debt by use of any
> unconscionable means. Such means include, but are not limited to, the following:
> . . .
>
>> (2)     Collecting or attempting to collect from the consumer all or any part
>>         of the debt collector's fee or charge for services rendered, *collecting
>>         or attempting to collect any interest or other charge, fee or expense
>>         incidental to the principal debt unless legally entitled to such fee or
>>         charge.*

N.C. Gen. Stat. 75-55 (2011) (emphasis added). In order to determine whether collecting on the

Note was an attempt to collect on a debt through unconscionable means, the Court must first

determine whether the Plaintiffs' loan was usurious based on violation of § 24.1-1F. Because there

is a genuine issue of material fact as to whether the Plaintiffs' loan was usurious, then it must follow

that there is a genuine issue of material fact as to whether WMC acted in violation of § 75-55. Only

after a trial on the issue of violation of § 24.1-1F can the Court determine whether WMC collected

interest it was not legally entitled to charge. Accordingly, viewing the pleadings and affidavits in

the light most favorable to the Plaintiffs, the Court finds a genuine issue of material fact exists as to

whether WMC violated § 75-55.

## VI.     Reformation of the Note

The Plaintiffs allege they are entitled to reformation of the terms set forth in the Note and

incorporated within the Deed of Trust held by WMC on the Property pursuant to N.C. Gen. Stat. §

1-254 (2011). The Plaintiffs assert the penalty for usury, resulting from the violation of § 24-1.1F,

entitles them to modification of the terms of the Note and deed of trust in accordance with the remedies provided under N.C. Gen. Stat. § 24-2 (2011).

Section 24-2 provides in pertinent part:

> The taking, receiving, reserving or charging a greater rate of interest than permitted by this chapter or other applicable law, either before or after the interest may accrue, when knowingly done, shall be a forfeiture of the entire interest which the note or other evidence of debt carries with it, or which has been agreed to be paid thereon.

N.C. Gen. Stat. § 24-2 (2011).  Section 1-254 provides:

> Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise, and obtain a declaration of rights, status, or other legal relations thereunder. A contract may be construed either before or after there has been a breach thereof.

N.C. Gen. Stat. § 1-254 (2011).

The Plaintiffs are interested persons as they are parties to the Note and the deed of trust securing the Note.  The Plaintiffs seek to have the Note reformed, declaring the rate of interest usurious and modifying the terms to provide for any remedy available at law.  Because the Court finds there are genuine issues of material fact as to whether WMC violated § 24-1.1F, and any reformation of the Note would stem from relief for that violation, then it necessarily follows that a genuine issue of material fact remains as to whether the Plaintiffs are entitled to reformation of the Note and deed of trust.

## CONCLUSION

As the Plaintiffs proceed under the theory of recoupment, the Court finds the statute of limitations does not bar prosecution of the case.  The Plaintiffs' basis for the objection to WMC's

20

proof of claim is primarily dependent on the Court granting relief pursuant to the second claim for relief of usury.  As explained above, a determination of the claim of usury requires a particularly factual analysis to which genuine issues of material fact exist.  The remaining claims for relief are in some form or another dependent on the Court's findings as to the claim of usury.  When viewed in the light most favorable to the Plaintiffs, the Court finds genuine issues of material fact exist related to the usury claim.  Therefore, it necessarily follows that genuine issues of material fact exist in regard to the Plaintiffs' remaining claims.  Accordingly, the Defendants are not entitled to judgment as a matter of law.  The Motion for Summary Judgment is **DENIED**.

       **SO ORDERED.**

**END OF DOCUMENT**